UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CHAYA-SARAH SAKS,

                Plaintiff,

    -against-                              **MEMORANDUM AND ORDER**
                                                          24-CV-02045 (OEM) (CLP)

ANDREU, PALMA, LAVIN, & SOLIS, PLLC, and
MIDLAND CREDIT MANAGEMENT, INC.,

                Defendants.
------------------------------------------------------------------x
ORELIA E. MERCHANT, United States District Judge:

       Plaintiff Chaya-Sarah Saks ("Plaintiff" or "Saks") commenced this action against law firm Andreu, Palma, Lavin, & Solis, PLLC ("APLS") and debt collection agency Midland Credit Management, Inc. ("MCM") (collectively "Defendants") alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1662 *et seq*. (the "FDCPA"). Complaint ("Compl."), ECF 1. Before the Court is APLS's fully briefed motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. *See* APLS's Motion to Dismiss ("APLS Mot."), ECF 20; Plaintiff's Response in Opposition ("Pl's Opp."), ECF 20-1; APLS's Reply ("APLS Reply"), ECF 20-2. For the following reasons, Defendant APLS' motion is granted.

**BACKGROUND**[1]

       Plaintiff alleges that, on or before March 5, 2024, she incurred a debt obligation with Comenity Bank ("Comenity"), which was acquired by MCM after the debt entered default. Compl.

---

[1] The factual allegations are drawn from Plaintiff's complaint and Exhibit A attached to the complaint. Compl.; Ex. A, ECF 1-4. Exhibit A is a complaint and exhibits filed by APLS on behalf of MCM against Saks in Palm Beach County Court on March 5, 2024: (1) Complaint, *Midland Credit Management, Inc. v. Chaya-Sarah Saks*, Filing # 193378990 (Palm Beach Cnty. Court, Mar. 5, 2024) ("Florida Complaint"); (2) a bill of sale executed on March 28, 2023, between Comenity and MCM in which Comenity conveyed to MCM certain credit card account purchase agreements; (3) two Comenity billing statements for Ann Taylor MasterCard mailed to Plaintiff at an address in Flushing, New York. Ex. A. In her complaint, Plaintiff references and incorporates Exhibit A. *See* Compl.

1

¶¶ 22, 25. Plaintiff alleges that MCM "contracted with Defendant APLS to collect the alleged debt." *Id.* ¶ 26.

On March 5, 2024, APLS filed the Florida Complaint against Plaintiff on behalf of MCM in Palm Beach County Court in Florida. *Id*. ¶28; *see* Florida Complaint. In the Florida Complaint, MCM, as plaintiff and through its counsel APLS, alleges that venue is proper in Palm Beach County Court because "[Saks] is a resident of th[e] county and/or because [Saks] executed the subject agreement in th[e] county." Florida Complaint ¶ 2. APLS attached two exhibits to the Florida Complaint, one of which contained Comenity billing statements addressed to Plaintiff that were mailed to an address in Flushing, New York. Ex. B to Florida Complaint at 11, 15.

Plaintiff alleges that she does not currently live in Palm Beach County, Florida, and that she did not execute the subject agreement in that county. Compl. ¶¶ 30-31. Plaintiff alleges that the Flushing, New York address "is where Plaintiff resided when the account was opened and [ ] where all the billing statements were sent by Comenity." *Id*. ¶ 33. APLS asserted in the Florida Complaint that venue was proper in Palm Beach County Court, which Plaintiff now alleges "is utterly false on its face" and that APLS knowingly made this false representation "in an attempt to select a venue of [APLS's] choosing and [to] restrict [Saks's] right to contest the [Florida] lawsuit." *Id*. ¶¶ 34, 36.

Plaintiff asserts that MCM and APLS violated multiple provisions of the FDCPA, which she alleges has caused her to "suffer from emotional distress . . . [and] extreme emotional harm[,]" as well as "extreme embarrassment[.]" *Id*. ¶¶ 47, 56, 57. Plaintiff alleges that these harms were the result of MCM and APLS filing suit in Florida court where, as a New York resident, she "has no ability to defend [against] a lawsuit [filed] in a county [and] a state she does not reside in." *Id*. ¶ 51.

2

## LEGAL STANDARDS

### A.     Federal Rule of Civil Procedure 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of demonstrating the court's personal jurisdiction over the defendants. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010). A court has "considerable procedural leeway" on a Rule 12(b)(2) motion and may decide it on the basis of affidavits alone, permit discovery in aid of the motion, or conduct an evidentiary hearing. *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Id.* (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). At the preliminary stage, prior to discovery upon a defendant's Rule 12(b)(2) motion, a plaintiff need only persuade the court "that its factual allegations constitute a prima facie showing of jurisdiction." *Id.* (citation omitted). Where, as here, the court relies on the pleadings and affidavits, the court construes the pleadings and affidavits in the light most favorable to the plaintiff and resolves all doubts in plaintiff's favor. *Id.* at 85. However, courts should "not draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). The Court may consider materials "outside the pleadings on a motion to dismiss for lack of personal jurisdiction without converting it into a summary judgment motion." *Johnson v. UBS AG*, 791 F. App'x 240, 241 (2d Cir. 2019).

"To determine personal jurisdiction over a non-domiciliary in a case involving a federal question," the court first "appl[ies] the forum state's long-arm statute." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). If the long-arm statute permits personal

3

jurisdiction, the court analyzes whether personal jurisdiction comports with due process protections established under the Constitution. *Id.* at 164.

### B.     New York's Civil Practice Law and Rules

"In a federal question case, where the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules if the applicable federal statute does not provide for national service of process." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004). Because the FDCPA does not provide for national service of process, New York's Civil Practice Law and Rules ("C.P.L.R.") §§ 301 and 302 govern the instant action. *See id.*; *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000).

## DISCUSSION

Defendant APLS seeks dismissal of this action for lack of personal jurisdiction over it under Rule 12(b)(2). *See generally* APLS Mot.

As stated above, personal jurisdiction against a non-domiciliary corporation involves a two-step inquiry. First, the Court must look to the forum state's general jurisdictional or long-arm jurisdictional statue to determine whether personal jurisdiction exists over the nonresident defendant. *Sonera Holding B.V. v. Cukurova Holdings A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). Second, if the long arm statute allows the Court to exercise jurisdiction, the Court must then determine whether the exercise of jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution. *Sonera Holding B.V.*, 750 F.3d at 224; *Chloé*, 616 F.3d at 164.

Plaintiff asserts that the Court has personal jurisdiction over APLS based on both general jurisdiction under C.P.L.R. § 301 and specific jurisdiction under New York's long-arm statute, C.P.L.R. § 302(a). General jurisdiction "permits a court to adjudicate any cause of action against

4

the . . . defendant, wherever arising, and whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). Specific jurisdiction exists "when the cause of action sued upon arises out of the defendant's activities in a state." *Id.*

### A.     General Jurisdiction

A corporation is subject to personal jurisdiction under C.P.L.R. § 301 with respect to any causes of action, even those unrelated to defendant's contacts with New York, when the defendant is "engaged in such a continuous and systematic course of 'doing business' in [New York] as to warrant a finding of its 'presence' in the jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir. 1990) (citation omitted); *accord Photoactive Prods. Inc. v. AL-OR Int'l ¥Ltd.*, 99 F. Supp. 2d 281, 287 (E.D.N.Y. 2000). "The [C]ourt must be able to say from the facts that the corporation is present in [New York] not occasionally or casually, but with a fair measure of permanence and continuity." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 77 N.Y.2d 28, 34 (1990). Courts use the following common factors to determine whether a defendant is "doing business" in the State: "[t]he existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990); *accord  Brown v. Web.com Group, Inc.*, 57 F. Supp. 3d 345, 354 (S.D.N.Y. 2014) ("Additional indicia of a corporation's presence in the forum include whether it has employees, agents, offices, banks account, or property within the state; whether it is authorized to do business there; the volume of business it conducts with state residents; whether it has a phone listing in the state; whether it does public relations work there; and whether it pays state income or property taxes.").

5

Plaintiff has not alleged facts sufficient to confer general personal jurisdiction over APLS under C.P.L.R. § 301. APLS is not incorporated in and does not have a principal place of business in New York and its members are not citizens of New York for jurisdictional purposes. APLS' certificate of incorporation shows that it is organized in the State of Florida with its principal place of business in Miami, Florida. The certificate does not list any offices in the State of New York or any other states. APLS Mot., Ex. 1. The certificate shows that APLS' members are residents of the State of Florida and none of the members is listed with an address in New York. *Id.* Because APLS is incorporated in Florida and its principal place of business is in Miami, Florida, New York is not the paradigm forum of general jurisdiction of APLS. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (holding that the paradigm forum for general jurisdiction of a corporation is the state of its place of incorporation and its principal place of business).

Plaintiff argues in opposition that APLS derived revenue from collecting debts from individuals with addresses in New York and that APLS' portal payment on its website does not specifically exclude payments from individuals in the State of New York. Pl's Opp. at 7. Plaintiff does not cite to, and the Court is not aware of, any authority for the proposition that the fact that a defendant's website does not specifically exclude residents of the forum state confers general jurisdiction. On the contrary, courts in this Circuit have held that "the fact that a foreign corporation has a website accessible to New York is insufficient to confer jurisdiction under C.P.L.R. § 301." *Spencer Trask Ventures, Inc. v. Archos S.A.*, 01-CV-1169 (LAP), 2002 WL 417192, at *6 (S.D.N.Y. Mar. 18, 2002); *Nat'l Football League v. Miller*, 99-CV-11846 (JSM), 2000 WL 335566, at *2-3, (S.D.N.Y. Mar. 30, 2000) (noting that mere maintenance of a website visited by people in New York does not confer personal jurisdiction in New York, but finding purposeful availment because website directly profited from plaintiffs in New York); *Freeplay*

6

*Music, Inc. v. Cox Radio, Inc.*, 04-CV 5238 (GEL), 2005 WL 1500896, *7 (S.D.N.Y. June 23, 2005) ("It stretches the meaning of 'transacting business' too far to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred or was actively sought."). Defendant indicates that it does not maintain any business in New York and does not file lawsuits in New York. *See Atwal v. iFinex Inc.*, 22-CV-149 (JLS) (LGF), 2023 WL 3063450, at *8 (W.D.N.Y. Mar. 22, 2023) (finding that website that can be accessed by New York residents is not sufficient to justify the exercise of personal jurisdiction unless some degree of commercial activity occurred in New York); *Blockchange Ventures I GP, LLC v. Blockchange, Inc.*, 21-CV-891 (PAE), 2021 WL 3115437, at *7 (S.D.N.Y. July 22, 2021) ("courts in this Circuit have exercised personal jurisdiction where the Defendant runs a semi-interactive site accessible to New Yorkers and Defendant sells or sold services in the state"); *see also Holey Soles Holdings v. Foam Creations, Inc.*, 05-CV-6893 (MBM), 2006 WL 1147963, at *4-5 (S.D.N.Y. May 1, 2006) (finding that the defendant's website, which included information about its products and authorized retailers, and allowed customers to purchase products from defendant's out-of-state headquarters, was "insufficient to confer jurisdiction in New York" without more evidence). Further, courts have found that even allegations of solicitation through a website are insufficient. *See e.g., Sound Around Inc. v. Audiobahn, Inc.*, 07-CV-773 (RJD) (CLP), 2008 WL 5093599, at *5-6 (E.D.N.Y. Nov. 24, 2008) (even where plaintiff provided evidence of solicitation, general jurisdiction did not exist). Consequently, the Court finds that it does not have general personal jurisdiction over APLS.

### B. Specific Jurisdiction

APLS argues specific jurisdiction does not exist over it because Plaintiff has failed to allege a nexus between her claims and APLS' conduct showing that it purposefully availed itself of the privilege of doing business in New York. Def's Mot. at 4-6. New York's long-arm statute provides that courts may exercise specific jurisdiction over out-of-state defendants where the claim arises from (1) a transaction of business within the state, (2) a commission of a tortious act within the state, (3) a commission of tortious acts without the state causing injury within the state, (4) defendant owns, uses or possesses any real property situated within the state. C.P.L.R. § 302(a)(1)-(4); *Herod's Stone Design v. Mediterranean Shipping Co. S.A.*, 434 F. Supp. 3d 142, 153 (S.D.N.Y. 2020). Plaintiff does not allege that APLS committed tortious acts within the state and does not allege that APLS owns, uses or possesses real property in New York, therefore the second and fourth prongs of the long-arm statute are not met. Thus, the Court now turns to consider whether Plaintiff has plausibly alleged specific jurisdiction under the first and third prongs of New York's long-arm statute.

#### 1. C.P.L.R. § 302(a)(1)

Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state" when the cause of action arises from those transactions. C.P.L.R. § 302(a)(1). "To establish personal jurisdiction under § 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (citation omitted).

8

Plaintiff's cause of action does not arise from APLS transacting business in New York—it arises from APLS filing a lawsuit against her in Florida to collect a debt. Rather, Plaintiff argues in her opposition that APLS transacts business in New York because APLS was MCM's agent, MCM regularly does business in New York, and MCM is domiciled and has a principal place of business in New York. Pl's Opp. at 7-8. While APLS does not appear to dispute that it contracted with MCM, APLS nonetheless maintains that the complaint does not allege that APLS transacted business in New York or contracted to supply goods or services in New York. Def's Reply at 4-5.

A non-domiciliary may be subject to personal jurisdiction under C.P.L.R. § 302(a)(1) where an agent under its control "transacted any business within the State." *New Media Holding Co. LLC v. Kagalovsky*, 97 A.D.3d 463, 464 (1st Dep't 2012) (cleaned up). C.P.L.R. § 302(a)(1) requires an agency relationship, even if not "a formal agency relationship," in which the purported agent "acted purposely in New York for [the defendant's] benefit and with their knowledge and consent, and that defendant[ ] . . . exercised some control over the other defendants in the matter." *Id*. For personal jurisdiction to exist over APLS, MCM must have acted in New York as an agent under the control of APLS as its principal. However, Plaintiff alleges the reverse in her complaint: that APLS is the agent of MCM. The complaint states that MCM is a "debt collector" and "creditor" who "acquired" Plaintiff's debt, "contracted with [] APLS to collect the alleged debt," and that APLS "collects . . . debts . . . on behalf of creditors" – in this case MCM. Compl. ¶¶ 25, 26, 27. Plaintiff also claims that APLS filed the Florida lawsuit "on behalf of [] MCM." Compl. ¶ 13.b. Under these facts, MCM was not an agent under APLS's control and APLS did not exercise "some control" over MCM. As such, Plaintiff's allegations are insufficient to show that APLS, "through an agent," transacted "any business within" New York. *New Media Holding Co.*, 97

A.D.3d at 464; *see also QBE Americas, Inc. v. Allen*, 22-CV-756 (JSR), 2022 WL 889838, at *5 (S.D.N.Y. Mar. 25, 2022). Courts have declined to find jurisdiction where the non-domiciliary defendant acted as the agent of the domiciliary, not the other way around. *See Related Companies, L.P. v. Ruthling*, 17-CV-4175, 2017 WL 6507759, at *14 (S.D.N.Y. Dec. 18, 2017) (finding no conspiracy jurisdiction because non-domiciliary defendant "acted at the behest of . . . the purported in-state co-conspirator, not the other way around"); *see also LS Promotions, Inc. v. UrgentRN, LLC*, Index 606184/2020, 2021 N.Y. Misc. LEXIS 55060, at *40 (Sup. Ct. Nassau Cnty. Mar. 24, 2021) (same).

Any remaining argument by Plaintiff that APLS transacted business in New York such that C.P.L.R. § 302(a)(1) confers jurisdiction is unavailing. APLS is a legal services provider, and courts in the Second Circuit have regularly found that providing legal services or representation for clients who happen to be domiciled in New York is not sufficient to constitute "transaction of business." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999) (finding that because non-domiciliary law firm performed all of its legal research and writing services in preparing an opinion and closing relevant security documents outside of New York, and none of the firm's partners or agents entered New York or were required to be physically present to perform any of those services, the action against defendants did not arise out of any alleged New York business solicitations, as is required under § 302(a)(1)); *see Mayes v. Leipziger*, 674 F.2d 178, 184-85 (2d Cir. 1982) (noting that "Defendants were not to perform their services in New York" and "[t]here was no activity in New York in which defendants sought to participate"); *cf. Monbo v. Nathan*, 623 F.Supp.3d 56, 135 (E.D.N.Y. 2022) ("[M]ore limited contacts regarding services to be performed outside New York would not satisfy [section]

10

302(a)(1).") (alteration in original) (quoting *Yih v. Taiwan Semiconductor Mfg. Co.*, 815 Fed. App'x 571, 574 (2d Cir. 2020)).

Because APLS does not transact in business in New York, the Court need not address whether Plaintiff's claim arises from such business transaction. Consequently, C.P.L.R. § 302(a)(1) does not confer jurisdiction over APLS.

### 2. C.P.L.R. § 302(a)(3)

Plaintiff argues that the Court has jurisdiction under C.P.L.R. § 302(a)(3). "Section 302(a)(3) . . . is 'more stringent than any constitutional requirement.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 72 (2d Cir. 2023) (citation omitted), *cert. denied sub nom. UPS Supply Chain Sols., Inc. v. EVA Airways Corp.*, 144 S. Ct. 559 (2024). Section 302(a)(3) confers jurisdiction over a non-domiciliary when five elements are met:

> (1) The [plaintiff stated a colorable claim that the] defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; (5) the defendant derives substantial revenue from interstate or international commerce.

*Id.* at 72 (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006)); *see* C.P.L.R. § 302(a)(3)(i)-(ii). Each element is essential, and "if plaintiff fails to proffer sufficient evidence for any element, it is dispositive of the issue of personal jurisdiction under this provision." *Bonilla v. Nelson & Kennard*, 19-CV-05067, 2020 WL 5763774, at *3 (E.D.N.Y. Sept. 28, 2020).

Plaintiff has failed to allege the third element under Section 302(a)(3), which requires that the tortious act caused injury to a person or property within New York. C.P.L.R. § 302(a)(3). To determine whether the third element has been met, the Court applies the situs-of-injury test, which asks to locate the "original event which caused the injury, not the location where the resultant

11

damages are subsequently felt by plaintiff." *Bank Brussels Lambert,* 171 F.3d at 791 (quoting *Hermann v. Sharon Hosp., Inc.*, 135 A.D.2d 682, 683 (2d Dep't 1987)). Therefore, "the occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001). "Residence or domicile of the injured party within New York is not a sufficient predicate for jurisdiction under § 302(a)(3)." *Shelbourne Glob. Sols., LLC v. Gutnicki LLP*, 658 F. Supp. 3d 104, 121 (E.D.N.Y. 2023).

Here, the genesis of Plaintiff's injury is not APLS' general attempt to collect a debt. Rather, the alleged tortious acts committed by APLS are the filing of the lawsuit in Florida and the alleged false facts set forth in the Florida Complaint, including that Plaintiff was a resident of Palm Beach County, Florida and the subject agreement was executed in that county. *See* Compl. ¶¶ 28-41, 63, 74. On these facts, Plaintiff has not established that the situs of the injury is New York. *See Mirman v. Feiner*, 900 F. Supp.2d 305, 319 (E.D.N.Y. 2012) (where theory of injury was based on commencement of lawsuit in Florida against New York resident, situs of injury was Florida, and not New York). The only connection to New York in this action appears to be Plaintiff's residence in New York. APLS could not have reasonably expected that filing a lawsuit on behalf of their client MCM in Florida would specifically cause harm to Plaintiff in New York. And as stated above, Plaintiff's causal connection—maintaining a website with a portal payment—is too attenuated to confer jurisdiction. Thus, Plaintiff has failed to demonstrate injury within New York to establish jurisdiction under C.P.L.R. § 302(a)(3).

Consequently, C.P.L.R. 302(a)(3)(ii) does not confer personal jurisdiction over APLS. And because Plaintiff has not met the third element, the Court finds that personal jurisdiction over APLS under C.P.L.R. 302(a)(3) does not exist.[2]

## CONCLUSION

For the foregoing reasons, Defendant APLS' motion to dismiss is granted, and APLS is hereby dismissed from this action.

SO ORDERED.

/s/
ORELIA E. MERCHANT
United States District Judge

January 28, 2025
Brooklyn, New York

---

[2] Given the Court's finding that there is no personal jurisdiction over APLS under New York's long-arm statute, an analysis of whether exercising personal jurisdiction would comport with constitutional principles of due process would be futile. *See Shelbourne*, 658 F. Supp. 3d at 123 (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) ("[E]xcept where the long-arm statute permits jurisdiction to the extent permitted by principles of Due Process — as it commonly does in states other than New York—analysis under Due Process principles is not necessary unless there is long-arm jurisdiction under the applicable state statute.")).

13