UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHAYA-SARAH SAKS, individually and on
behalf of all others similarly situated,

                             Plaintiff,

             -against-

ANDREU, PALMA, LAVIN, & SOLIS, PLLC;
MIDLAND CREDIT MANAGEMENT, INC.,

                       Defendants.

------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
24 CV 2045 (OEM) (CLP)

On March 20, 2024, plaintiff Chaya-Sarah Saks commenced this class action against

defendant Midland Credit Management, Inc. ("MCM" or "defendant"),[1] alleging violations of

the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, stemming from

defendant's efforts to collect a debt allegedly owed to Comenity Bank ("Comenity").  Currently

pending before this Court on referral from the Honorable Orelia E. Merchant is defendant's

September 4, 2024 motion to dismiss the plaintiff's Complaint for failing to comply with the pre-

suit notice requirements and class action waiver in the Comenity Bank Credit Card Agreement

(the "Agreement"), or, in the alternative, to compel plaintiff to arbitrate her claims on an

individual basis as specified in the Agreement.

## FACTUAL BACKGROUND

Plaintiff, a resident of Queens, N.Y. and a "consumer" as defined under 15 U.S.C.

§ 1692(a)(3) and 12 C.F.R. § 1006.2(e), allegedly incurred an obligation with Comenity Bank,

---

[1] The Complaint as originally filed included claims against defendant Andreu, Palma, Lavin, & Solis, PLLC ("APLS").  (See Complaint, filed March 20, 2024 ("Compl.") (ECF No. 1)).  Those claims were dismissed by order of the district court on January 28, 2025, finding that it lacked personal jurisdiction over APLS.  (See ECF No. 25).

some time prior to March 5, 2024.  (Compl. ¶¶ 7-8, 22-23).  Plaintiff alleges that defendant

MCM acquired the alleged debt and contracted with APLS to collect the debt.  (Id. ¶¶ 25-26).

According to evidence submitted by defendant MCM in support of its motion, plaintiff opened

an Account with Comenity on or about October 17, 2021, pursuant to an agreement issued by

Comenity (the "Agreement").  (Ross Decl.[2]  ¶¶ 6-7). The debt at issue constituted a charged off

Ann Taylor-branded Comenity Bank credit card (the "Account"), which plaintiff used to make

purchases, thus accepting the terms and conditions of the Agreement.  (Id.  ¶¶ 3-7, 11-12; Debt

Collection Notice, Ex. B to Ross Decl., ECF No. 22-10).[3]

The Agreement contains a mandatory arbitration provision with class action and jury trial

waivers that states:  "Arbitration may be elected by any party with respect to any Claim, even if

that party has already initiated a lawsuit with respect to a different claim."  (Id. ¶ 9 (quoting

Agreement, Ex. A to Ross Decl. at 6, ECF No. 22-9).  The Agreement further provides:

> If you or we elect to arbitrate a Claim, you will not have
> the right to pursue that Claim in court or have a jury decide
> the Claim.  Also, your ability to obtain information from us
> is more limited in arbitration than in a lawsuit.  Other rights
> that you would have if you went to court may also not be
> available in arbitration.
>
> If you or we elect to arbitrate a Claim:
>
> > a.   Neither you nor we may participate in a class action in
> > court or in class-wide arbitration . . . ;

---

[2] In connection with the motion to dismiss or, in the alternative, compel arbitration, defendant has
submitted the Declaration of Sandra Ross, Manager Process Excellence at MCM, dated July 18, 2024 ("Ross
Decl."), (ECF No. 22-8), and the Reply Declaration of Sandra Ross, dated September 3, 2024 ("Ross Reply Decl."),
(ECF No. 22-15).  According to Ms. Ross, she is a records custodian for MCM, is familiar with the recordkeeping
practices and policies of MCM, and has personally reviewed the file concerning plaintiff's account.  (Ross Decl. ¶¶
2-4).
[3] Among other complaints, defendant asserts that plaintiff did not provide MCM with written notice of any
claim in accordance with the terms of the Agreement before initiating this lawsuit.  (Id. ¶¶ 11-12).  (See discussion
infra at 20-22).

(Id.).  The Agreement also includes an additional pre-suit notice and cure provision that provides that:  "Prior to bringing a lawsuit or initiating an arbitration that asserts a claim arising out of or related to this Agreement . . . the party asserting the Claim . . . shall give the other party . . . written notice of the Claim . . . and a reasonable opportunity, not less than 30 days, to resolve the Claim. . . ."  (Id. ¶ 10 (citing Agreement, Ex. A to Ross Decl. at 5).

Under the terms of the Agreement, Comenity "'may assign any or all of our rights and obligations under this Agreement to a third party.'"  (Id. ¶ 15 (citing Agreement, Ex. A to Ross Decl. at 5)).  On March 29, 2023, MCM sent plaintiff a letter, indicating that the Account had been sold to MCM on March 28, 2023, and that MCM was now the sole owner of the Account. (Id. ¶ 16 (citing Debt Collection Notice, Ex. B to Ross Decl.)).  Ownership of the Account was transferred via a Credit Card Account Purchase Agreement ("PSA") between Comenity Bank and MCM entered around October 25, 2019.  (Ross Reply Decl. ¶ 6; Pl's Opp.[4] at 6).

According to the Complaint, on or around March 5, 2024, APLS, acting on behalf of MCM, commenced suit against plaintiff in Palm Beach County Court in Florida, alleging that venue lay in Florida.  (Compl. ¶¶ 28, 34).  Plaintiff asserts that she did not live in Palm Beach County, Florida, and instead resided in New York when the Account was opened.  (Id. ¶ 33). Plaintiff further alleges that Comenity sent all account statements to her New York address.  (Id. ¶¶ 32-33).

Plaintiff claims that defendant violated the FDCPA by knowingly making a false representation to the Florida state court in an effort to forum shop and restrict plaintiff's ability to contest the claims in the lawsuit.  (Id. ¶¶ 34, 36-37).  Plaintiff brings claims under 15 U.S.C. § 1692(e)(10), for misrepresenting plaintiff's residency in the Florida complaint; for using unfair

---

[4] Citations to "Pl.'s Opp." refer to Plaintiff's Memorandum of Law in Support of Her Opposition to Defendant Midland Credit Management, Inc.'s Motion to Compel Arbitration (ECF No. 22-11).

or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692(f); and for engaging in conduct that results in the harassment, oppression, or abuse of a person in connection with the collection of a debt, in violation of 15 U.S.C. § 1692(d).  (Id. ¶¶ 37-40, 61-64, 66-70, 72-75).

On September 4, 2024, defendant MCM filed a fully briefed motion to dismiss the Complaint or, in the alternative, to compel arbitration.  (Def.'s Mot.[5]).  On October 23, 2024, defendant MCM filed a motion for leave to electronically file the PSA under seal because it contains confidential information.  (See ECF No. 23 ("Sealing Mot.")).  On October 24, 2024, Judge Merchant referred the motion to dismiss and compel arbitration to the undersigned.

DISCUSSION

Defendant first moves to dismiss the Complaint in its entirety based on plaintiff's alleged failure to comply with the Agreement's provision that requires either party to provide pre-suit notice to the other side before commencing a lawsuit or arbitration.  (Def.'s Mot. at 6-7).  Defendant also contends that dismissal of the action is required because plaintiff asserts claims on behalf of a class, in violation of the class action waiver contained in the Agreement.  (Id. at 7-8).  In the alternative, defendant moves to compel arbitration, pursuant to the Agreement's arbitration provision ("Arbitration Provision").  (Id. at 9-12).

In opposing both motions, plaintiff contends that defendant lacks the right to enforce any of the contractual provisions in the Agreement because MCM failed to demonstrate that the terms of the Agreement, including the Arbitration Provision, were assigned to MCM upon MCM's purchase of plaintiff's account from Comenity.  (Pl.'s Opp. at 1-2, 5-13).  Plaintiff

---

[5] Citations to "Def.'s Mot." refer to Defendant Midland Credit Management, Inc.'s Memorandum of Law in Support of its Motion to Dismiss Or, Alternatively, Compel Arbitration (ECF No. 22-1).

further argues that her FDCPA claims are not within the scope of the Arbitration Provision.  (Id. at 13-16).

The Second Circuit holds that a district court should issue a stay rather than dismiss a claim when all the claims in an action are subject to arbitration.  See Katz v. Cellco Partnership, 794 F.3d 341, 347 (2d Cir. 2015); see also Jones v. Landry's, Inc., No. 1:23 CV 9920, 2025 WL 1527307, at *5 (S.D.N.Y. May 29, 2025) (observing that "a district court should generally rule on a motion to compel arbitration before proceeding to a merits-based motion to dismiss" because "jurisdiction generally must precede merits in dispositional order").  Accordingly, the Court first considers whether the entire Agreement, including the Arbitration Provision, was assigned to MCM upon its purchase of the Account and whether the Arbitration Provision applies to plaintiff's claims in this action.

I.   The Federal Arbitration Act

The Federal Arbitration Act ("FAA") provides that "[a] written provision . . . to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . ."  9 U.S.C. § 2.  The Supreme Court and the Second Circuit have generally enforced agreements to arbitrate, noting that there is a strong federal policy in favor of promoting arbitration consistent with legislative intent.  See AT&T Mobility v. Concepcion, 563 U.S. 333, 345-46 (2011); Guyden v. Aetna, Inc., 544 F.3d 376, 382 (2d Cir. 2008); Arciniaga v. General Motors Corp., 460 F.3d 231, 235 (2d Cir. 2006).  Thus, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"  In re American Exp. Fin. Adv. Sec. Lit., 672 F.3d 113, 128 (2d Cir. 2011) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

However, the FAA's "liberal policy in favor of arbitration is limited by the principle that . . . 'arbitration is a matter of contract, and therefore a party cannot be required to submit to

5

arbitration any dispute which [it] has not agreed so to submit.'" Holick v. Cellular Sales of New York, LLC, 802 F.3d 391, 395 (2d Cir. 2015) (alteration in original) (quoting JLM Indus. v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004)). The statute was enacted to ensure that agreements to arbitrate would be "'as enforceable as other contracts, *but not more so*.'" Ross v. American Exp. Co., 547 F.3d 137, 143 (2d Cir. 2008) (emphasis in original) (quoting Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 364 (2d Cir. 2003)) (further citations omitted). Therefore, the presumption that disputes should be resolved in favor of arbitration does not apply to the preliminary question of "whether an agreement to arbitrate has been made" in the first instance. Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC, 645 F.3d 522, 526 (2d Cir. 2011).

"In deciding whether a dispute is arbitrable, [the Court] . . . must answer two questions:  (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." Greene v. Kabbalah Centre Int'l, Inc., 625 F. Supp. 3d 3, 14 (E.D.N.Y. 2022) (alteration in original) (quoting Holick v. Cellular Sales of New York, LLC, 802 F.3d at 394). The first question of "whether the parties have indeed agreed to arbitrate" at all is "[t]he threshold question facing any court considering a motion to compel arbitration." Schnabel v. Trilegiant Corp., 697 F.3d 110, 118 (2d Cir. 2012). In determining whether there is an enforceable agreement to arbitrate, courts apply general principles of contract law, looking not only at whether the individual has acknowledged the terms of the written agreement, see David L. Threlkeld & Co., Inc. v. Metallgesellschaft Ltd., 923 F.2d 245, 249 (2d Cir. 1991), but also at whether the individual continues to perform services following notice of the obligation to arbitrate disputes. See Brown v. Coca-Cola Enters., No. 08 CV 3231, 2009 WL 1146441, at *6-8 (E.D.N.Y. Apr. 28, 2009) (granting motion to compel arbitration despite the

absence of a signed arbitration agreement where plaintiff continued to work after receiving employee manual including arbitration provision). This threshold question is "necessarily for the court and not the arbitrator," since "the arbitrator has no authority . . . with respect to a matter at issue absent an agreement to arbitrate." Schnabel v. Trilegiant Corp., 697 F.3d at 118 (citing AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648-49 (1986)); see also Doctor's Assocs., Inc. v. Alemayehu, 934 F.3d 245, 251 (2d Cir. 2019) (holding that "parties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place"). The second question concerning the scope of arbitrable issues under the agreement is considered a question of "arbitrability," and is "presumptively for the court to decide," unless "'there is clear and unmistakable evidence from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator.'" Alvarez v. Experian Info. Sols., Inc., 661 F. Supp. 3d 18, 27-28 (E.D.N.Y. 2023) (quoting Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002)).

"In the context of motions to compel arbitration . . . the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). In determining whether a valid arbitration agreement exists, the court resolves "all reasonable inferences in favor of the non-moving party." Abdullayeva v. Attending Homecare Servs. LLC, 928 F.3d 218, 221 (2d Cir. 2019) (citing Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016)). "Because the standard is akin to that on summary judgment, materials outside the pleadings may be considered." Lobban v. Cromwell Towers Apartments, Ltd. P'ship, 345 F. Supp. 3d 334, 342 (S.D.N.Y. 2018); see also Meyer v. Uber Techs., 868 F.3d 66, 74 (2d Cir. 2017) (on a motion to compel arbitration, "the court consider[s] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to

interrogatories, and admissions on file, together with . . . affidavits, and draws all reasonable inferences in favor of the non-moving party") (alterations in original) (quotations and citations omitted)).

A party seeking to compel arbitration "must make a *prima facie* initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" Deng v. Frequency Electronics, Inc., 640 F. Supp. 3d 255, 259 (E.D.N.Y. 2022) (quoting Hines v. Overstock.com, Inc., 380 Fed. App'x 22, 24 (2d Cir. 2010) (summary order)); see also Zachman v. Hudson Valley Fed. Credit Union, 49 F.4th 95, 102 (2d Cir. 2022) (noting that the party seeking to compel arbitration must make a prima facie showing that "an agreement to arbitrate was proposed and accepted"). "Once the moving party establishes a *prima facie* showing that an agreement existed, the party 'seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid.'" Deng v. Frequency Electronics, Inc., 640 F. Supp. 3d at 259 (quoting Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010).

"[I]f there is a disputed question of material fact, such that the making of the arbitration agreement . . . is in issue, then the court shall proceed summarily to the trial thereof." Barrows v. Brinker Rest. Corp., 36 F.4th 45, 49 (2d Cir. 2022) (quotation marks omitted and alterations adopted). A genuine issue of material fact exists if there is "'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Golden Pac. Bancorp. v. F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). The party "opposing arbitration may not satisfy this burden through 'general denials of the facts on which the right to arbitration depends'; in other words, '[i]f the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing

8

may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried.'" <u>Dill v. JPMorgan Chase Bank, N.A.</u>, No. 19 CV 10947, 2020 WL 4345755, at \*4 (S.D.N.Y. July 29, 2020) (quoting <u>Oppenheimer & Co. v. Neidhardt</u>, 56 F.3d 352, 358 (2d Cir. 1995)); <u>see also</u> <u>Doctor's Assocs., Inc. v. Jabush</u>, 89 F.3d 109, 114 (2d Cir. 1996) (holding that, "[t]o establish a genuine issue entitling a party to a jury trial, an unequivocal denial that the agreement [to arbitrate] had been made [is] needed, and some evidence should [be] produced to substantiate the denial") (quotation marks omitted).  Courts have found the party opposing arbitration to have satisfied its evidentiary burden through the provision of "affidavits and exhibits attached to the petition and answer" which "tend[ed] to substantiate appellants' denial of the existence of contractual relations." <u>Interocean Shipping Co. v. National Shipping & Trading Corp.</u>, 462 F.2d 673, 676 (2d Cir. 1972).

   If a genuine issue of material fact is shown, an evidentiary hearing or summary jury trial is required by the Federal Arbitration Act.[6] <u>See</u> 9 U.S.C. § 4 (providing that "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof").  <u>See also</u> <u>Burch v. P.J. Cheese, Inc.</u>, 861 F.3d 1338, 1347 (11th Cir. 2017) (noting that appellant had a statutory right under 9 U.S.C. § 4 for a jury to resolve a genuine issue of material fact regarding the making of an arbitration agreement).  On the other hand, if the court finds that the parties agreed to arbitrate the claims at issue, Section 3 of the FAA requires that, "on application of one of the parties[,] [the court] stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3. In 2015, the Second Circuit made clear that the FAA "requires a stay

_____

[6] Courts have used the terms "trial" and "evidentiary hearing" interchangeably in describing the hearing required by 9 U.S.C. § 4 where a showing of a genuine issue of material fact is made.  <u>See</u> <u>WCW, Inc. v. Atlantis Indus., Inc.</u>, 698 F. Supp. 3d 708, 734 (D. Vt. 2023), <u>aff'd</u>, No. 23 7726 CV, 2024 WL 5038529 (2d Cir. Dec. 9, 2024) (collecting cases).

of proceedings when all claims are referred to arbitration and a stay [is] requested." <u>Katz v. Cellco P'ship</u>, 794 F.3d at 343.

II.   <u>Motion to Compel Arbitration</u>

In lieu of dismissal of the Complaint (<u>see</u> discussion *infra* at 20-22), defendant moves to compel arbitration. (Def.'s Mot. at 9-12.) As noted above, caselaw requires the party seeking to compel arbitration to make a prima facie showing that an agreement to arbitrate actually existed between the parties. (<u>See</u> discussion *supra* at 5-10).

In addressing the threshold issue of whether the parties entered into a valid agreement such that defendant can compel the plaintiff to submit to arbitration, the Court looks to state contract law to determine if there was an enforceable agreement to arbitrate. <u>See First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995).[7] Here, defendant has satisfied its burden of making out a prima facie case that an agreement to arbitrate exists by producing evidence of a written and signed agreement to arbitrate. <u>See Hines v. Overstock.com, Inc.</u>, 380 F. App'x at 24 (noting the holding in <u>Scone Invs., L.P. v. American Third Mkt. Corp.</u>, 992 F. Supp. 378, 381 (S.D.N.Y. 1998), and finding that "production of signed writing" satisfies the prima facie case requirement). Defendant contends that the Agreement, entered into between plaintiff and Comenity, contained multiple statements advising the plaintiff of the arbitration requirements, and thus is clear and unambiguous. (Def.'s Mot. at 9-10). Specifically, defendant notes that there is language in the Agreement that states explicitly that "[t]his Agreement includes an

---

[7] In deciding what state's contract law to apply in this analysis, the forum state's choice-of-law doctrine governs. <u>Oestreicher v. Equifax Info. Servs., LLC</u>, No. 23 CV 239, 2024 WL 1199902, at *3-4 (E.D.N.Y. Mar. 20, 2024). Although the parties appear to rely largely on New York law and there does not appear to be a dispute as to choice of law, the Court finds that the significant contacts—plaintiff's alleged residence and the location where the Agreement was entered into—all lie in New York and applies New York contract law in evaluating the issues relating to the Arbitration Provision and the other terms of the Agreement. <u>See Kai Peng v. Uber Techs., Inc.</u>, 237 F. Supp. 3d 36, 47 (E.D.N.Y. 2017) (holding that under New York's choice of law analysis, the applicable state contract law should be based on the state which "has the most significant contacts with the matter in dispute").

Arbitration Provision with class action and jury trial waivers. You can reject the Arbitration Provision.  If you do not, it will be part of this Agreement." (Id. at 10 (citing Agreement, Ex. A to Ross Decl. at 3, ECF No. 22-9)).[8]  The Agreement provides instructions as to how to reject the Provision, how to initiate arbitration, and what disputes are covered.  (Id.)  Defendant contends that by failing to object and using the Account, plaintiff agreed to the Arbitration Provision and cannot dispute its enforceability.  (Id. at 10-11).

Indeed, plaintiff does not appear to dispute that she entered into the Agreement with Comenity, nor does plaintiff dispute that the parties agreed to submit disputes to arbitration. Here, as described *supra*, the Agreement contains several clauses clearly describing the Arbitration Provision and its parameters.  See Morelli v. Alters, No. 19 CV 10707, 2020 WL 1285513, at *9 (S.D.N.Y. Mar. 18, 2020) (finding valid agreement where the parties "unambiguously agreed to arbitrate").  Given that defendant has carried its burden of demonstrating the existence of the agreement to arbitrate and plaintiff's assent to the same, the burden shifts to plaintiff to demonstrate that there is a genuine issue of material fact as to the enforceability of the Agreement and its Arbitration Provision.

While plaintiff does not challenge the existence of the Agreement or the language of the Arbitration Provision, (Pl.'s Opp. at 2-3), plaintiff opposes both defendant's motion to dismiss and motion to compel arbitration on the ground that defendant MCM has failed to establish that it has the right to enforce the Arbitration Provision after it acquired the Account from Comenity. (Id. at 1).  Plaintiff contends that absent specific evidence showing that there was an assignment of rights to the underlying Agreement—specifically the right to enforce the Arbitration Provision and not just the assignment of the right to collect the debt—courts have denied motions to

___
[8] Defendant places this language on the second page of the agreement, but it appears that it appears on the top of the third page.

11

compel arbitration.  (Id. at 6-11 (citing Lance v. Midland Credit Mgmt., 375 F. Supp. 3d 604, 615 (E.D. Pa. 2019))); see also Kres v. Cavalry SPV I, LLC, No. 20-3176, 2021 U.S. Dist. LEXIS 57764, at *8 (D.N.J. Mar. 24, 2021) (denying debt collector's motion to compel arbitration where defendants failed to produce the Master Purchase and Sale Agreement). Plaintiff further cites Winkelman v. Midland Credit Management Inc., where the court denied a similar motion filed by MCM to compel arbitration where MCM failed to submit the Master Purchase and Sale Agreement that defined the "terms and conditions" of the assignment.  No. 3:23 CV 407, 2024 WL 3551152, at *9-10 (D. Conn. July 27, 2024).  The Winkelman court found that MCM failed to demonstrate that there was no factual dispute as to whether it could enforce the arbitration provision of the agreement because there was no "specific documentation reflecting an assignment."  (Id.)

In the instant case, plaintiff notes that defendant MCM provided only the Portfolio Level Affidavit of Sale by Original Creditor sworn to by Bruce A. Sweeten (the "Sweeten Aff.) (Ex. D to Ross Reply Decl., ECF No. 22-17), Chief Credit Officer of Comenity Bank, and the Bill of Sale.  (Pl.'s Opp. at 11).  Plaintiff argues that defendant's motion fails because it has not provided the critical document referenced in the Bill of Sale—the Credit Card Account Purchase Agreement or "PSA"—which defines what rights were actually transferred when defendant purchased the Account.  (Id. at 5-11).  In his affidavit, Bruce Sweeten, represents that on or about March 28, 2023, Comenity, as the seller of the subject Account, sold a pool of charged-off accounts (the "Accounts") by a PSA to MCM.  (Sweeten Aff. ¶ 4).  The Sweeten Affidavit states that Comenity "sold, transferred, assigned, conveyed, granted, bargained, set over and delivered to [MCM] . . . good and marketable title to the Accounts and any unpaid balance."  (Id. ¶ 5). However, the Sweeten Affidavit contains no mention of any other rights, such as the right to

compel arbitration, nor does it define "Accounts." (Id.).  The Bill of Sale states only that Comenity Bank, "for value received and pursuant to the terms and conditions of that certain Credit Card Account Purchase Agreement dated October 25, 2019," assigns "all rights, title and interest . . . in and to those certain Accounts described in the [PSA]." (Bill of Sale, Ex. D to Ross Reply Decl., ECF No. 22-17).  Plaintiff contends that although the Bill of Sale states that "Accounts" have been assigned, there is no definition of "Accounts" in the document itself, which leaves open the question of whether the right to enforce arbitration was assigned to defendant MCM.  (Pl.'s Opp. at 11-13).

Defendant points out that plaintiff relies on out of district opinions to argue this failure of assignment, and notes that courts in this district have enforced arbitration provisions even when a party does not provide the purchase and sale agreement underlying the transfer of arbitration rights.  (Def.'s Reply[9] at 3-5 (citing Biggs v. Midland Credit Mgmt., Inc., No. 17 CV 340, 2018 WL 1225539 (E.D.N.Y. Mar. 9, 2018) (granting MCM's motion to compel where PSA was not provided)).  In Biggs v. Midland Credit Management, Inc., Judge Bianco, then a United States District Judge, found that the defendant could enforce an arbitration provision because the plaintiff acknowledged in the complaint that the debt was transferred to the defendant for collection.  2018 WL 1225539 at *7; see also Brecher v. Midland Credit Mgmt., Inc., No. 18 CV 3142, 2019 WL 1171476, at *6 (E.D.N.Y. Mar. 13, 2019) (finding that "a valid agreement to arbitrate exists" where "the legal right to collect on the debt" was transferred).  In the instant case, plaintiff similarly alleges that "[t]he alleged debt was thereafter acquired . . . by Defendant MCM." (Complaint ¶ 25).  Following the reasoning of Judge Bianco, defendant MCM's rights to enforce the arbitration provisions in the Agreement would naturally follow from its acquisition

---

[9] Citations to "Def.'s Reply." refer to Defendant Midland Credit Management, Inc.'s Reply Memorandum of Law in Further Support of Its Motion to Dismiss Or, Alternatively, Compel Arbitration (ECF No. 22-12).

of plaintiff's debt. Therefore, defendant contends that there is an independent basis—even absent a PSA—to find that it has the right to enforce the Arbitration Provision.

Nevertheless, to remove any lingering doubt as to the assignment of the Arbitration Provision, defendant submitted a redacted version of the PSA.[10] (ECF No. 23-3). In the redacted PSA provided by MCM, there is a provision that states that MCM purchased "all of Seller's [Comenity] rights, title and interest in and to eligible Accounts," id. at 8, with "Account" defined as "an account established or maintained for a cardholder pursuant to Seller's credit card program . . . including the Unpaid Balance owed by the applicable Cardholder and the associated receivable owned by the Seller." (Id. at 4). Indeed, the PSA does not distinguish between "account" and "receivables," and instead incorporates receivables into its definition of Account. This further supports defendant's argument that its purchase of the Account from Comenity gave it rights beyond the collection of plaintiff's debt. Citing this additional specific documentary evidence, MCM contends that it has established that it is the sole owner of all rights, title and interest in the Account, and that the Court should therefore enforce the Arbitration Provision. (Def.'s Reply. at 5).

Having reviewed plaintiff's critique of the evidence marshalled by defendant in support of its motion, the Court finds that the redacted PSA firmly establishes that defendant MCM was assigned not only the right to collect the debt, but also the right to enforce the Arbitration Provision. To the extent that plaintiff has cited cases to suggest that the Court must deny any request to compel arbitration based on the lack of sufficient evidence to support the transfer of more than just the right to collect on the debt, the Court finds that these cases are not controlling.

---

[10] In support of their reply, Defendants move to file a redacted copy of the Credit Card Account Purchase Agreement ("PSA") between MCM and Comenity Bank under seal. (ECF No. 23-1). The redacted copy is found at ECF No. 23-3. This request to file the PSA in redacted form is granted.

Furthermore, defendant has, by supplementing its papers, responded to any doubt raised by these cases. Based upon the language of the Bill of Sale and the PSA, the Court finds that in acquiring the Account, both MCM and Comenity intended to transfer not only the debt and the right to collect the debt, but also the entire Agreement along with its terms. Thus, the Court respectfully recommends that the district court find that there are no material issues of fact in dispute as to whether Comenity transferred all rights to the Account to MCM, and that there exists a valid agreement to arbitrate between plaintiff and defendant.

III.    FDCPA Claims Are Within the Scope of the Arbitration Clause

As for the second prong of the test to determine whether a dispute is arbitrable, the court must determine if the allegations underlying the claims "touch matters covered by the parties' . . . agreements." Holick v. Cellular Sales of New York, LLC, 802 F.3d at 395. As noted above, the Agreement, by its terms, covers "any claim, dispute or controversy . . . that in any way arises from or relates to this Agreement, the Account, the issuance of any Card," and includes "disputes based on contract, tort, consumer rights, fraud." (Ross Decl. ¶ 14; Agreement, Ex. A to Ross Decl. at 5-7, ECF No. 22-9).

Citing the language of the Agreement, Defendant argues that the scope of the Arbitration Provision is broad and covers any claims or disputes arising from the "Agreement, the Account [or] the issuance of any Card," and that the term "Claim" has "the broadest possible meaning," which includes consumer rights claims. (Def.'s Mot. at 11-12). Given that there is a written Arbitration Provision and the dispute falls within the Arbitration Provision, defendant contends that the plaintiff's claims should be compelled to arbitration. (Id. at 12).

In response, plaintiff contends that even if there was a valid assignment of the right to compel arbitration, her claims under the FDCPA do not fall within the scope of the Arbitration Provision, which covers "'any claim, dispute or controversy . . . that in any way arises from or

15

relates to this Agreement, [or] the Account.'" (Pl.'s Opp. at 13). Plaintiff cites several cases from the Eleventh Circuit which hold that rights to fair debt collection practices "are the sole reserve of the statute." (Id. (citing cases)). She argues that her statutory claims under the FDCPA did not arise under the Agreement because the Agreement only contemplates cases arising from "the use of the Ann Taylor-branded credit card," and here the allegedly deceptive practices are not claims related to the use of the card. (Id. at 13-14 (citing Bazemore v. Jefferson Capital Systems, LLC, No. CV 314-115, 2015 WL 2220057, at *8 (S.D. Ga. May 11, 2015) (holding that plaintiff's FDCPA claims against conduct of a debt collector were not ceded in arbitration agreement)).

Plaintiff also argues that FDCPA claims are not covered by broad arbitration provisions that do not expressly cover claims arising from a debt collector's conduct. (Id. at 14-15 (citing Pacanowski v. Alltran Financial, LP, 271 F. Supp. 3d 738, 749 (M.D. Pa. 2017)). She cites Carter v. Payback Repo, Inc., No. 22 CV 5083, 2023 U.S. Dist. LEXIS 150415, at *10 (E.D.N.Y. Aug. 25, 2023), where the court held under Florida law that a third-party debt collector could not invoke the arbitration provision in an agreement between consumer and creditor where the third-party entity had not purchased or owned the debt. Courts in this district have cited Carter v. Payback Repo, Inc. to deny enforcement by third-party debt collectors of arbitration clauses in FDCPA suits, while maintaining that those same arbitration provisions are enforceable by creditors or assignees. See, e.g., Ferro v. Allied Interstate, LLC, No. 19 CV 49, 2019 WL 3021234 (E.D.N.Y. July 10, 2019) (granting signatory's motion to compel arbitration in FDCPA claim and denying motion as to non-signatory); Madorskaya v. Frontline Asset Strategies, LLC, No. 19 CV 895, 2021 WL 3884177 (E.D.N.Y. Aug. 31, 2022) (finding that "Citibank did not expressly assign its right to compel arbitration to Defendant"); Wojcik v. Midland Credit Mgmt.,

Inc., No. 18 CV 3628, 2019 WL 3423567 (E.D.N.Y. July 30, 2019) (denying debt servicer's motion to compel who was a non-party in the litigation).

Defendant argues that Carter v. Payback Repo, Inc. is not relevant because MCM is not a third-party debt collector; it is the sole owner of the Account with all the rights and obligations under the Agreement.  (Def.'s Reply at 6-7).  Moreover, defendant contends that plaintiff's FDCPA claims "arise from" or "relate to" the Agreement or the Account and efforts to collect monies owed under the Account and fall within the provision that expressly refers to "statutory or regulatory" claims.  (Id.).  Urging the Court to construe the arbitration agreement "liberally in favor of arbitration," defendant argues that the Agreement and the Arbitration Provision are extremely broad and clearly encompass plaintiff's claims.  (Id.).

As defendant notes, plaintiff relies on out-of-district cases that are not controlling on this Court.  By contrast, in Clarke v. Alltran Financial, LP, this court held that a debt collector could seek to enforce the terms of an arbitration clause when faced with alleged violations of the FDCPA.  No. 17 CV 3330, 2018 WL 1036951, at *4-6 (E.D.N.Y. Feb. 22, 2018); see also Wexler v. LVNV Funding, LLC, No. 22 CV 1348, 2023 WL 4305776, at *7-8 (S.D.N.Y. June 30, 2023) (holding that the assignee of arbitration rights may compel arbitration).

Having considered the parties' arguments, the Court finds that defendant has demonstrated that the plaintiff entered into an agreement with Comenity Bank, and accepted the terms of the Agreement, including the Arbitration Provision, by using the card and not opting out of the Provision.  Plaintiff has not contested any of these facts.  Defendant has further demonstrated that there are no material issues of fact in dispute as to whether MCM became the assignee of the Agreement and its terms when it purchased the Account from Comenity. Consequently, plaintiff continues to be bound by her agreement to arbitrate all covered disputes.

Finally, having considered the case authority cited by both parties, and construing the Arbitration Provision broadly, see Abudullayeva v. Attending Homecare Servs., LLC, 928 F.3d at 222 (holding that "any doubt" as to whether a claim is arbitrable should be resolved "in favor of arbitration"), the Court finds that defendant has met the second prong of the test for arbitrability by demonstrating that the broad Arbitration Provision in the Agreement covers plaintiff's statutory FDCPA claims. These claims arise in connection with and are related to the Account, to plaintiff's failure to pay the debt owed under the Account, and to defendant's efforts to collect the monies owed.

Accordingly, the plaintiff's claims under the FDCPA are subject to arbitration and the Court respectfully recommends that the parties be Ordered to arbitrate the claims.

IV.    The Court Compels Arbitration on an Individual Basis

Defendant also moves to dismiss the action because the Agreement contained a waiver of plaintiff's right to represent a class of consumers or participate in a class action. (Def.'s Mot. at 7). Citing the provision in the Agreement that states "[t]his Agreement includes an Arbitration Provision with class action and jury trial waivers," defendant contends that plaintiff accepted the Arbitration Provision, and became bound by the provision that "neither [the plaintiff] nor [the defendant] may participate in a class action in court or in class-wide arbitration." (Id. at 8).

Class action waivers as part of an arbitration agreement have been found enforceable because "classwide arbitration interferes with the fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2001). Class action arbitration waivers have also been upheld in the context of credit card agreements. See American Express Co. v. Italian Colors Rest., 570 U.S. 228, 238 (2013) (reversing the decision to invalidate a class action waiver in a credit card agreement); see also Frankel v. Citicorp Ins. Servs., Inc., No. 11 CV 2293, 2014 WL 1051855, *7-9 (E.D.N.Y. Aug.

18

12, 2014), report and recommendation adopted, No. 11 CV 2293, 2015 WL 6021534 (E.D.N.Y. Oct. 14, 2015).  Defendant argues that the case should be dismissed because plaintiff commenced this action on behalf of a class, while having waived the right to participate in a class action.  (Def.'s Mot. at 8).  In the alternative, defendant argues that the Court should compel plaintiff to arbitrate her FDCPA claims on an individual basis.  (Id. at 12).

In opposing defendant's motion, plaintiff reiterates her position that the FDCPA claims fall outside the scope of the Arbitration Provision and that defendant may not invoke the class action waiver.  Supreme Court precedent dictates that this Class Action Waiver is enforceable. See, e.g., AT&T Mobility v. Concepcion, 563 U.S. at 352 (holding that class-action waivers in consumer contracts are enforceable); see also Shetiwy v. Midland Credit Mgmt., 959 F. Supp. 2d 469, 474-75 (S.D.N.Y. 2013) (enforcing class action waivers with respect to FDCPA and RICO claims).  Indeed, "the enforceability of a class action waiver in an arbitration clause is a question of arbitrability that is ordinarily for a court, and not the arbitrator, to decide." Emilio v. Sprint Spectrum L.P., 508 F. App'x 3, 4 (2d Cir. 2013).  Having rejected plaintiff's argument and concluded that the Arbitration Provision covers plaintiff's FDCPA claims, the Court finds that the class action waiver is valid and respectfully recommends that defendant's motion to compel arbitration on an individual basis be granted.

It is also respectfully recommended that plaintiff's class claims be dismissed.  While the Second Circuit held in Katz v. Cellco Partnership, 794 F.3d at 346-47, that a proceeding must be stayed when all claims in an action have been referred to arbitration, courts in this circuit have continued to dismiss a complaint's class allegations based on a class action waiver while staying an action pending individual arbitration.  See Brecher v. Midland Credit Mgmt., Inc., No. 18 CV 3142, 2019 WL 1171476, at *7 (E.D.N.Y. Mar. 13, 2019); Vitrano v. N.A.R., Inc., No. 18 CV

06754, 2020 WL 1493620, at *10 (E.D.N.Y. Mar. 27, 2020); <u>Biggs v. Midland Credit Mgmt.,</u> <u>Inc.</u>, 2018 WL 1225539, at *9-10; <u>Jackson v. Rushmore Serv. Ctr., LLC</u>, No. 18 CV 4587, 2019 WL 4736914, at *7 (E.D.N.Y. Sept. 27, 2019); <u>but see</u> <u>Dellarocca v. Atl. Credit & Fin., Inc.</u>, No. 19 CV 2667, 2020 WL 13553687, at *4 (E.D.N.Y. Sept. 28, 2020) (staying entirety of action, including class action claims barred by waiver, when granting motion to compel individual arbitration). This course of action conforms with the holding in <u>Katz v. Cellco Partnership</u> because, unlike the other substantive claims underlying this action, the class claims that plaintiff brings are explicitly *not* arbitrable given the class action waiver. In light of this precedent, the class action waiver in the Arbitration Provision should be enforced. Accordingly, it is respectfully recommended that the Court compel arbitration of plaintiff's claims on an individual basis and dismiss plaintiff's class action claims.

V.   <u>Defendant's Motion to Dismiss</u>

MCM has also moved to dismiss the Complaint in its entirety because plaintiff failed to allege that pre-suit notice was provided to defendant before commencing this action, as required by the Agreement, and brought class action claims despite the clear waiver provision in the Agreement. (Def.'s Mot. at 6-7). Defendant argues that plaintiff accepted the terms of the Agreement by using the Account to purchase items, failed to provide written notice to defendant prior to filing suit, and failed to allege that she provided any such notice in the Complaint. (<u>Id.</u> (citing <u>Anderson v. Unilever U.S., Inc.</u>, 607 F. Supp. 3d 441, 457 (S.D.N.Y. 2022) (holding that in pleading pre-suit notice, "plaintiff must provide factual allegations . . . supporting the contention that [they] notified [the] defendant of the alleged breach"))).

Since the Court has found that plaintiff's claims must be heard by an arbitrator, defendant's request for dismissal under Rule 12(b)(6) is moot. <u>See</u> <u>Fontaine v. Resurgent Cap.</u> <u>Servs., L.P.</u>, 540 F. Supp. 3d 353, 362 (W.D.N.Y. 2021) (finding request for dismissal under

Rule 12(b)(6) moot where court granted motion to compel arbitration). While it is true that courts in this district have dismissed claims where plaintiffs failed to provide pre-suit notice before filing an action, see, e.g., DeSimone v. Select Portfolio Serv'g, Inc., No. 20 CV 3837, 2023 WL 6450236, at *6-9 (E.D.N.Y. 2023), the Court finds that these procedural questions should be handled by the arbitrator. Although neither party addressed this issue, courts have held that "once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." Turner on Behalf of Int'l Bhd. of Elec. Workers Loc. 1200, AFL-CIO v. CBS Broad. Inc., 599 F. Supp. 3d 187, 191 (S.D.N.Y. 2022) (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964); see also Duran v. J. Hass Grp., LLC, No. 10 CV 4538, 2012 WL 3233818, at *3 (E.D.N.Y. June 8, 2012), aff'd 531 F. App'x 146 (2d Cir. 2013) (holding that "what kind of arbitration proceeding the parties agreed to" is "a procedural question left to the arbitrator"). Procedural terms governing arbitration have been held by courts as not "material" or "essential," and thus to be determined by the arbitrator. See Hudson Specialty Ins. Co. v. New Jersey Transit Corp., No. 15 CV 89, 2015 WL 3542548, at *7 (S.D.N.Y. June 5, 2015); Bristol v. Securitas Sec. Servs. USA, Inc., 597 F. Supp. 3d 574, 580 (S.D.N.Y. 2022) (defining non-essential terms to include "the method for selecting an arbitrator, the arbitral forum, the procedural law to be followed, the substantive law to be applied, and the location where the arbitration should be held").

Since the Court recommends that defendant's alternative request to compel individual arbitration be granted, the Court further recommends that the motion to dismiss for lack of pre-suit notice be stayed at this time and the question of pre-suit notice be considered by the arbitrator during the course of arbitration.

<u>CONCLUSION</u>

In conclusion, it is respectfully recommended that defendant's alternative request to compel arbitration on an individual basis be granted, that plaintiff's class action claims be dismissed, and that plaintiff's remaining claims be stayed in favor of arbitration.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); <u>see also</u> Fed. R. Civ. P. 6(a) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>See, e.g.</u>, <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk of Court is respectfully directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      August 8, 2025

                                    /s/ Cheryl L. Pollak
                                    Cheryl L. Pollak
                                    United States Magistrate Judge
                                    Eastern District of New York